Case 08-18326  Filed 06/26/09  Doc 31

FILED
JUN 26 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 08-18326-B-7
)
Jessie Ruiz and ) DC No. JES-1
Lynette Ruiz, )
)
      Debtors. )
)

**MEMORANDUM DECISION REGARDING TRUSTEE'S
OBJECTION TO AMENDED EXEMPTIONS**

James Salven appeared in his capacity as the chapter 7 trustee.

Scott Lyons, Esq., appeared on behalf of the debtors, Jessie Ruiz and Lynette Ruiz.

      The chapter 7 trustee, James Salven (the "Trustee"), objects to an amended exemption of real property claimed by the debtors, Jessie and Lynnette Ruiz (the "Debtors"). The Trustee contends that the Debtors are judicially estopped from claiming the exemption based on the fact that the Debtors did not disclose the property until after the Trustee did his own research and inquired about the property at the meeting of creditors (the "Objection"). Alternatively, the Trustee contends that the Debtors amended their exemptions in bad faith. For the reasons set forth below, the Trustee's Objection will be overruled.

      This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 522[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

This bankruptcy commenced with the filing of a voluntary chapter 7 petition on December 18, 2008. With their petition, the Debtors filed the required schedule A, listing their interest in real property, and the statement of financial affairs ("SOFA"). The Debtors' initial schedule A disclosed an interest in one parcel of real property, their residence, located on N. Elm St., in Visalia, California. The residence appears to be fully encumbered and was not claimed as exempt.

On their SOFA, at question number 10 (Other transfers), the Debtors disclosed the prepetition transfer of an unidentified asset on February 17, 2006 (the "2006 Transfer"). Under the heading "Name and Address of Transferee, Relationship to Debtor," the Debtors listed "Gilbert Ruiz . . . Father." Under the heading "Describe Property Transferred and Value Received," the Debtors stated "Transferred to son/daughter due to father being ill." No other information was provided in the initial schedules to clarify or explain the 2006 Transfer, or to identify what the 2006 Transfer applied to.

The meeting of creditors under § 341(a) was scheduled for January 15, 2009 (the "Creditor Meeting"). The Debtors both appeared and answered questions submitted by the Trustee regarding their schedules and their assets. Each Debtor verified the accuracy of the schedules. The Trustee then inquired about the 2006 Transfer disclosed in the SOFA. By that time, the Trustee had already discovered, through an independent asset search, that the Debtors had an interest in a parcel of real property located on N. Bridge

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated on or *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

St., in Visalia, California (the "Bridge Property"). The Trustee informed the Debtors that he had discovered the Bridge Property and that he intended to administer their interest in the Property for the benefit of the estate. The Creditor Meeting was then continued for two weeks for further investigation of the Bridge Property and the 2006 Transfer referenced in the SOFA, and to allow the Debtors to amend their schedules.

Two days before the continued Creditor Meeting, on January 27, the Debtors filed an amended schedule A to disclose that the Debtors co-owned an interest in the Bridge Property with Jessie Ruiz' sister, Linda Gojara. The Debtors' interest in the Bridge Property was valued at $80,000, subject to a lien in the amount of $21,684 held by Countrywide Home Loans. The Debtors also amended schedule C to exempt their interest in the Bridge Property under California's "wild card" exemption in the maximum amount available, $20,625.[2] The Debtors amended schedule C before the Trustee had employed a real estate broker or done anything to administer the Bridge Property. The Trustee timely objected to the amended exemption only as to the Bridge Property.

**The Trustee's Objection.**

The Trustee contends that the Debtors have acted in bad faith and that the Debtors are estopped from exempting the Bridge Property based on their verification of the erroneous schedules and their failure to disclose the Property until after it was discovered by the Trustee. The Trustee did not brief the "estoppel" issue and it is not clear which "estoppel" doctrine the Trustee is relying on. Since this is a judicial proceeding, and the Objection is based on the nondisclosure of an asset in official court forms, the court construes the Trustee's Objection to be based on the doctrine of judicial estoppel.

The Debtors responded to the Objection with a declaration of Jessie Ruiz which states that:

(1) he had forgotten about the Bridge Property until the Trustee's inquiry at the

---

[2]The Debtors also used their "wild card" exemption under Cal.Code of Civ.P. 703.140(b)(5) for numerous items of personal property totaling $1,200. The maximum allowable exemption is $21,825.

3

Creditor Meeting;

(2) his father had deeded the Bridge Property to himself and his sister two or three years before the bankruptcy, after his father had a stroke;

(3) his father moved away from the Bridge Property and did not tell the Debtors about the deed until later;

(4) the Debtors do not live on the Bridge Property and had not seen the Property for several years, and;

(5) the Debtors had no intent to hide any assets.

The Trustee offered no evidence to suggest that the statements set forth in Jessie Ruiz' declaration are untrue. He relies solely on the fact that the Debtors initially verified the accuracy of their bankruptcy schedules, and then amended the schedules after he discovered the Bridge Property and told them he intended to administer it for the estate.

**Issue Presented.**

Does the Debtors' failure to properly disclose an interest in the Bridge Property on the bankruptcy schedules, and their verification of erroneous schedules at the Creditor Meeting, judicially estopp the Debtors from later claiming an exemption of their interest in the Property?

**Analysis.**

**A. The Law of Amended Exemptions.**

Under § 521(a)(1)(B) and Rule 7001(b) & (c), the debtors have a duty to file, within 15 days after their petition, a complete and accurate schedule of their assets and liabilities. Unfortunately, it is a fact of life that bankruptcy schedules are not always complete and accurate. To accommodate this realty, we have Rule 1009 which supplements Rule 7001. It provides: "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." The right to amend under Rule 1009 includes the right to amend the debtor's list of exempt property. *Goswami v. MTC Distributing (In re Goswami)*, 304 B.R. 386, 393 (9th Cir. BAP 2003), *citing In Re Michael*, 163 F.3d 526, 529 (9th Cir. 1998). Rule 1009 is liberally construed, but is subject to some judge-made exceptions. *Arnold v. Gill (In re*

4

*Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000). The debtor's right to amend his or her exemption schedule does not mean that the debtor has an absolute right to have the amended exemption allowed. *Goswami*, 304 B.R. at 393. The critical date for determining a debtor's exemption rights is the petition date. *Id.* at 391-92, *citing White v. Stump*, 266 U.S. 310, 313 (1924).

A claimed exemption is presumptively valid. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999), *citing 9 Collier on Bankruptcy*, (15 Ed. Rev.), ¶ 4003.04 (1998). However, amendments to the exemption schedule may be disallowed if the debtor has acted in bad faith or if prejudice would result. *Arnold*, 252 B.R. at 784. Bad faith must be established by "concrete evidence." *Id.* at 781. Prejudice requires a showing of actual economic loss to the creditors due to the debtor's delay in claiming an exemption. *Id.* at 787. Delay alone is not bad faith and prejudice, once ameliorated, is not a basis to deny an exemption. *Id.* at 781. The Ninth Circuit's policy of liberally allowing amendment of an exemption schedule, in the absence of bad faith or prejudice, has the effect of enhancing the debtor's fresh start. *Goswami*, 304 B.R. at 394 (citation omitted).

In *Arnold*, a debtor filed a personal injury claim in state court. Approximately eighteen months later the debtor and his spouse filed a chapter 7 petition, but did not disclose the injury claim in the schedule of their personal property. Neither did they exempt the personal injury claim. The personal injury litigation was listed in their statement of financial affairs as "pending," and they were questioned by the trustee about the injury claim at the meeting of creditors. Over a year later the trustee hired special counsel under a contingency fee arrangement to prosecute the personal injury claim for the estate. The debtors did not object to employment of special counsel, nor did they amend their schedules to disclose and exempt the injury claim. Subsequently, the trustee negotiated a $200,000 settlement of the injury claim in the state court action and compromises with parties claiming liens against the proceeds, all of which was known to debtors. Finally, after the trustee had spent a substantial amount of time working on the

settlement, the debtors amended their schedules to include and exempt the personal injury claim. The settlement agreement had not yet been fully executed.

The trustee filed an objection to the amended exemption on the grounds of bad faith and prejudice. The basis for the trustee's bad faith argument was the timing of the exemption, which was amended more than five months after the settlement was reached. The trustee also argued that creditors would be prejudiced by the exemption. Alternatively, the trustee argued that the debtors should pay the fees and costs of the trustee and special counsel. The debtors responded that they did not realize the personal injury claim was an asset of the estate or that the schedules needed to be amended. The bankruptcy court disallowed the amendment, not on the basis of the passage of time, but because the court did not believe that omission of the injury claim was unintentional.

The court of appeals reversed and allowed the exemption. The record contained insufficient evidence to support a finding of either bad faith, prejudice, or intent to hide the asset. The court held that any prejudice to creditors must be balanced against the prejudice to the debtor of disallowing the exemption. *Id.* at 785 (citation omitted). The court noted that there could be prejudice had the debtor stood by while the estate incurred the cost of litigating the personal injury claim. However, the estate was never at risk for the litigation costs; special counsel was employed under a contingency fee arrangement and could be paid from the proceeds of the settlement. *Id.* at 788. The case was remanded for the bankruptcy court to determine the allowable amount of the exemption and to provide for payment of reasonable fees and costs incurred by the trustee and counsel. *Id.* at 789.

### B. The Trustee Has Not Shown Either Bad Faith or Prejudice.

The Bankruptcy Code does not define bad faith. "Like most questions of motive and intent, bad faith is a question of fact. Bad faith may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1156 (10th Cir. 2007) (citations omitted).

The usual ground for a finding of 'bad faith' is some attempt by the debtor to hide

assets. *Arnold*, 252 B.R. at 785. Ordinarily, some form of concealment is required to show bad faith in omitting an asset. *In re Cogliano,* 355 B.R. 792, 801 (9th Cir. BAP 2006). The party alleging the bad faith bears the burden of proof. *See Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988). The mere fact that a debtor omitted an asset from the schedules, standing alone, is insufficient to prove bad faith. *Id.* In addition, "[b]y itself, claiming an exemption late is simply not bad faith." *Arnold*, 252 B.R. at 786.

Here in the context of a summary proceeding, without an evidentiary hearing, the Trustee asks the court to determine that the Debtors' omission rises to the level of "bad faith."[3] The Trustee contends that the Debtors' failure to acknowledge the Bridge Property at the initial Creditor Meeting constitutes per se bad faith. However, bad faith must be determined on a case by case basis and decisions like *Arnold* set a relatively high bar for that determination. The Debtors may not have understood the nature of their interest in the Bridge Property when first confronted with the question at the initial Creditor Meeting, but they did nothing to actively conceal that interest. Indeed, they did disclose the 2006 Transfer in their SOFA. Based thereon, the court is persuaded that they did not intentionally try to conceal the Bridge Property. After the initial Creditor Meeting, they had an opportunity to further investigate the facts and they promptly amended their schedules to cure the defect. The Debtors did exactly what they were supposed to do under the circumstances; indeed exactly what the Federal Rules of Bankruptcy Procedure contemplate they should do, amend and correct the schedules. The Trustee has not met his burden of proof on the issue of bad faith.

Similarly, the court cannot find that exemption of the Bridge Property has caused any prejudice to creditors. The Trustee did not raise the "prejudice" argument in his Objection and there is nothing in the record to suggest that the estate has incurred any

---

[3]The Trustee did not raise the bad faith argument in his Objection; it was raised for the first time at oral argument. However, the Debtors fully briefed the bad faith and prejudice issues, and the application of *In re Arnold*, in their opposition brief.

expense or taken any position in reliance upon the Debtors' original schedules and SOFA.

### C. The Trustee Has Not Established a Basis for Judicial Estoppel.

The Trustee contends that the Debtors are estopped from amending their schedules. As noted above, the Trustee appears to be invoking the doctrine of judicial estoppel. Judicial estoppel is an equitable doctrine which may be invoked at the discretion of the court. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), *citing Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

Its purpose is "to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (citations omitted).

The doctrine of judicial estoppel was explained in *Diamond Z Trailer, Inc., v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412 (9th Cir.BAP 2007) as follows:

> Judicial estoppel is a flexible equitable doctrine based on the estoppel of inconsistent positions in which a litigant who has obtained one advantage through the court by taking a particular position is not thereafter permitted to obtain a different and inconsistent advantage by taking a different position.
>
> In the case of omitted assets in bankruptcy, the initial position is that there is no asset, the later inconsistent position is that there is an asset. The debtor need only have gained some advantage through the court's acceptance of the initial position, such as plan confirmation or grant of discharge.

*Id.* at 420-21 (citations omitted).

The U.S. Supreme Court has enumerated three non-exclusive factors to guide a trial court's determination of whether to apply the judicial estoppel doctrine in a particular case:

1. Whether a "party's later position" is "clearly inconsistent with its earlier position";

2. Whether "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and

3. Whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*New Hampshire*, 532 U.S. at 750-51, 121 S.Ct. 1808 (citations omitted).

      Here, the Trustee's frustration is perhaps justified; the Debtors' schedules were filed under penalty of perjury, the Trustee discovered the Bridge Property through independent research, and he gave the Debtors an opportunity to disclose their interest in the Property at the initial Creditor Meeting. However, the court also understands that the bankruptcy process can be overwhelming to individual debtors and the meeting of creditors is not necessarily a place where debtors can or will think clearly. When an issue arises with regard to a debtor's schedules, which cannot be resolved at the meeting of creditors, the debtor should have a reasonable time to sort out the answer and correct any deficiencies. Otherwise, Rule 1009 would have no meaning. The Trustee has presented no evidence to suggest that the Debtors have gained any advantage based on their original schedules. Nothing has yet occurred in this case to give the perception that the court was misled by the original schedules, or that the integrity of the judicial process has been compromised. The doctrine of judicial estoppel is not applicable here.

      Before concluding, the court is compelled to address in general the Trustee's attempt to use judicial estoppel as a basis for objecting to exemptions, as this is not the first time the issue has been raised by this Trustee. The Bankruptcy Appellate Panel for this Circuit has already articulated "bad faith" and "prejudice" as the two alternative grounds for disallowing an amended exemption. *Arnold*, 252 B.R. at 781. This court declines the Trustee's invitation to "expand the field" by adding a new reason to disallow an exemption. Judicial estoppel itself is grounded in principles of bad faith, reliance and prejudice. If "concrete facts" exist to support the application of judicial estoppel, then they should be offered in the context of the "bad faith" and "prejudice" tests already articulated in *Arnold*. If the Trustee can show that the Debtors intentionally filed false schedules, or transferred, omitted, or tried to conceal a material asset, then that issue should be raised in the context of an objection to discharge under § 727.

**Conclusion.**

      Based on the foregoing, the court is not persuaded that the Debtors tried to conceal

the Bridge Property, or that the schedules were amended to disclose and to exempt the Bridge Property in bad faith. Similarly, the court declines the Trustee's invitation to invoke the doctrine of judicial estoppel as a new basis to attack the exemption of a previously omitted asset. Since the Debtors have a near absolute right to amend their schedules at any time under Rule 1009(a), and since the Trustee has not presented evidence of the Debtors' bad faith, or prejudice to the estate, the Trustee's Objection to the Debtors' exemption of the Bridge Property will be OVERRULED.

Dated: June 26, 2009

W. Richard Lee
United States Bankruptcy Judge